**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VICTOR MOCANU | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT S. MUELLER, et al. | : | NO. 07-0445 |

---

| | | |
|---|---|---|
| GUISEPPE CUSUMANO | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ALBERTO GONZALES, et al. | : | NO. 07-0971 |

---

| | | |
|---|---|---|
| MOHAMMAD BARIKBIN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, et al. | : | NO. 07-3223 |

---

| | | |
|---|---|---|
| TONGZIAO ZHANG | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL CHERTOFF, et al. | : | NO. 07-2718 |

---

| | | |
|---|---|---|
| ANDREW O. NEWTON, M.D. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DONALD MONICA, et al. | : | NO. 07-2859 |

---

| | | |
|---|---|---|
| JEAN ELISSAINT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, et al. | : | NO. 07-4747 |

## MEMORANDUM AND ORDER

**Baylson, J.**                                                   **January 11, 2008**

### I.    Introduction

In the first five cases listed above, the Complaints have been filed against various government agencies, officials and employees, but principally, the United States Citizenship and Immigration Service ("USCIS") and the Federal Bureau of Investigation ("FBI"), with five Plaintiffs alleging improper and unnecessary delays as they seek to become naturalized United States citizens pursuant to 8 U.S.C. § 1421 et. seq.  In the last case, the Plaintiff makes the same allegations, but he seeks a change of status pursuant 8 U.S.C. § 1255, specifically seeking a "green card."  In Mocanu and Cusumano, the Court has denied the government's Motion to Dismiss, has set a pretrial schedule, and issued a Memorandum dated December 21, 2007, expressing concern at the procedural delays that have motivated the filing of these cases.  In Barikbin, Zhang, and Newton, government Motions to Dismiss and/or for Summary Judgment are pending.

The Court held a hearing on all of these cases, except Zhang and Newton, on January 8, 2008.  Counsel for the United States and all the Plaintiffs in those cases, except Victor Mocanu, were present.

At the hearing, I expressed concern about briefings in these cases filed by the U.S. Attorney's Office which failed to discuss or even mention recent, on-point decisions rendered by other judges of this Court.  Virginia Gibson, Esquire, counsel for the Defendants at the hearing, and the esteemed Chief of the Civil Division of the U.S. Attorney's Office, suggested that such oversights were unintentional and would be remedied in the future.

In view of the large number of cases with similar legal issues in this Court, and before different judges of this Court, I recommended that the government provide a periodic update of decisions by members of this Court to all the judges who have these cases.  Attached to this Memorandum and Order is a chart listing the decisions with which I am familiar at this time, the assigned judge, a summary and selected quotations.  This Memorandum will outline my preliminary views of the issues presented by these cases, to guide the parties for further proceedings.

II.    **Summary of the Law**

In one of its briefs, the government has accurately summarized the applicable law pertaining to naturalization.

> The Supreme Court noted in <u>INS v. Pangilinan</u>, 486 U.S. 875 (1988), that a person seeking to acquire rights as a citizen "can rightfully obtain them only upon terms and conditions specified by Congress," <u>id</u>. at 884, <u>quoting</u> <u>United States v. Ginsberg</u>, 243 U.S. 472, 474 (1917).  Thus, a person who has been lawfully admitted to the United States for permanent residence may become a citizen, subject to the requirement that he or she establish continuous residence in the United States in the five years preceding the filing of the application and make a showing of good moral character.  8 U.S.C. § 1427(a).
>
> Second, the statute and pertinent regulations provide for a specific process by which an application for naturalization is adjudicated.  This consists of the following:
>
> (a) The applicant must complete and submit an application for naturalization (N-400), along with the required fee.  8 U.S.C. § 1445(a); 8 C.F.R. §'s 316.4, 334.2.  In addition, the applicant must submit a set of fingerprints, provide information pertinent to his or her good moral character, and tender a complete account of any criminal background;
>
> (b) The C.I.S. initiates a three-tiered background investigation of

the applicant, including (although not confined to) all relevant
C.I.S. and police data.  8 U.S.C. § 1446; 8 C.F.R. § 335.1;

(c) The applicant is scheduled for an examination by a designated
naturalization officer who has the discretion to grant or deny the
application.  8 U.S.C. § 1446(b); 8 C.F.R. § 335.2;

(d) The application is decided.  If it is denied, the applicant may,
within 180 days, request an administrative hearing before a senior
immigration officer.  8 U.S.C. § 1447(a); 8 C.F.R. § 335.2.  If
denied again, and having exhausted his or her administrative
remedies, the application may seek de novo judicial review in a
United States district court.  8 U.S.C. § 1410(c); 8 C.F.R. §
335.9(b-d); or

(e) If approved, the applicant is required to take the oath of
allegiance in order to become a citizen.  8 U.S.C. § 1448(a); 8
C.F.R. § 337.1, et seq.  See Damra v. Chertoff, 2006 WL 1786246
(N.D. Ohio) at *1 (discussing process).

For individuals seeking an "adjustment of status," the process differs.  Plaintiff Elissaint

seeks to adjust his status pursuant to section 245 of the Immigration and Nationality Act (8

U.S.C. § 1255).  Section 245 of the Act, entitled "Adjustment of Status of Nonimmigrant to that

of Person Admitted for Permanent Residence," provides for processes by which an alien with an

immigrant visa may become a lawful permanent resident (LPR).  The Section is rather long, with

different subsections setting forth different standards and procedures for the adjustment of status,

depending, for example, on whether the alien is the fiancé(e) of a citizen, see 8 U.S.C. § 1255(d),

married to a citizen, see 8 U.S.C. § 1255(e), a "special immigrant", see 8 U.S.C. §§ 1255(g)(h),

or the victim of trafficking, see 8 U.S.C. § 1255(l).  Plaintiff Elissaint does not specify under

which subsection he seeks to become an LPR.  It would be unnecessarily complex to describe

-4-

Section 245 in detail in this memorandum.  USCIS[1] provided a general summary when it

published an interim rule amending its regulations under subsection 245(i) (8 U.S.C. § 1255(i)).

> Section 245 of the Act (8 U.S.C. 1255) allows the Attorney
> General, in his discretion, to adjust the status of an alien who has
> an immigrant visa immediately available to that of a lawful
> permanent resident (LPR) while the alien remains in the United
> States in lieu of applying for an immigrant visa at a U.S. consular
> office abroad, if certain conditions are met. An alien must have
> been inspected and admitted or paroled, be eligible for an
> immigrant visa and admissible for permanent residence and, with
> some exceptions, have maintained lawful nonimmigrant status. The
> alien must not have engaged in unauthorized employment.

66 Fed. Reg. 16383 (March 26, 2001).

The Third Circuit has explained that "Section 245 of the Immigration and Naturalization

Act requires the alien to fulfill two requirements, (1) the statutory requirements of inspection and

admission, eligibility for an immigrant visa and immediate availability of the visa, and (2) he

must convince the Attorney General to exercise favorable discretion in his case." Ameeriar v.

Immigration and Naturalization Service, 438 F.2d 1028, 1030 (3d Cir. 1971).

After presentations by counsel at the hearing, it became apparent that these cases are in

large part unnecessary and reflect a small scale litigation epidemic, similar to a sudden bout with

the measles, and in my opinion, just as readily curable.  Congress intended the naturalization

application process to be completed without undue delay: "the requirements of [8 U.S.C.] § 1446

and § 1447 thus require the USCIS to make a prompt determination on a naturalization

application." Khdir v. Gonzales, 2007 WL 3308001 (D.Colo. Nov. 6, 2007); see also Ajmal v.

Mueller, 2007 WL 2071873, *2 (E.D.Pa. July 17, 2007) (holding that the USCIS has a non-

---

[1] At the time, the agency was known as the Immigration and Naturalization Service, "INS".

discretionary duty to adjudicate naturalization applications without unreasonable delay).

Congress certainly did not intend for the process to become tortuous, expensive, mystifying and

delayed, but it has.  The government asserts that the required detailed background checks are

necessary, and that the overwhelming number of citizenship applications has led to the delays in

processing.  The government submitted lengthy declarations from the FBI and USCIS detailing

the work involved and the difficulty of processing the applications on a timely basis.  Congress

has provided for, but not defined, "a full criminal background check."[2]

--------

[2]  See Pub. L. 105-119, Tit. I, 111 Stat. 2240, 2248-49 (1997).  By means of this Act (the
"Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies
Appropriations Act, 1998"), Congress appropriated sums to various agencies, including USCIS,
for the fiscal year ending September 30, 1998.  This Act prohibited USCIS from using the
appropriated funds for the purpose of conducting criminal background checks and from
adjudicating an application for naturalization until the FBI confirmed that a "full criminal
background check" had been completed.  See Pub. L. No. 105-119, 111 Stat. 2448-49 (Nov. 26,
1997).  The Act does not define "full criminal background check."  In March of 1998, apparently
in response to the Appropriations Act, USCIS amended its regulations to "require a definitive
response from the FBI on the criminal background check on an applicant for naturalization"
before USCIS's final adjudication of a naturalization application.  63 Fed. Reg. 12982 (March
10, 1998).  USCIS's regulations set forth what kind of response from the FBI qualifies as a
"definitive response," see 8 C.F.R. § 335.2(b), and generally describe USCIS's procedure for
examining an applicant for naturalization.  However, the regulations also fail to define "full
criminal background check".

The Court does not believe that either Congress or the agency has provided any definition
of what is meant by a "full criminal background check," but notes that the government has
submitted a declaration from the FBI and has also provided a Memorandum as to the Status of
FBI checks, which seem to indicate that the FBI check in these cases is much broader than just
looking into whether an individual has a criminal record.  Plaintiffs' counsel do not dispute the
accuracy of these declarations or contest their admissibility.  Although careful security checks
must be made for individuals seeking entry into the United States, and for applications for
permanent legal residency, I fail to see why an individual who has achieved legal permanent
residency must undergo a detailed security clearance in order to become a naturalized citizen.
Their risk to the security of the United States (if any) certainly does not change when they
become a citizen.  However, it is very relevant to conduct a criminal background check to
determine whether they have had any law enforcement contacts during the period of time they
have been legal permanent residents.

Federal judges are not equipped to micro-manage the naturalization process nor to deny the Executive branch of the government the right to carry out the intent of the legislature for criminal background checks, etc.  However, under the Administrative Procedures Act ("APA"), this Court has jurisdiction to compel agency action that has been unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1).  If an agency is obliged to take certain action, a Court may compel an agency to act, without directing the agency as to what its decision should be.  Norton v. S. Utah Wilderness Alliance, 542 U.S. 55, 64 (2004).  USCIS has a mandatory, non-discretionary obligation to adjudicate these naturalization applications within a reasonable period of time.  Kaplan v. Chertoff, 481 F. Supp. 2d 370, 399 (E.D.Pa. April 16, 2007).  With only a few exceptions, most judges in this District have found subject matter jurisdiction and endorsed Judge Robreno's conclusion in Kaplan:  "CIS simply does not possess unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely."  Id.

The explanations given by government counsel for the various procedural delays documented in these cases, and the reasons for various acts or omissions by the defendant agencies, are insufficient, contradictory and disputed by Plaintiffs.  For reasons stated at the hearing and in this Memorandum, I have reached a tentative conclusion that Defendant USCIS, overwhelmed by these applications, has adopted a strategy of favoring delay by litigation, instead of developing an orderly and transparent administrative resolution.  Although this strategy is often evident in private party damages litigation, it is improper in these cases.  Congress did not intend that the path to citizenship be conducted along a detoured and rocky road of litigation.  Given the resources of the government and the technology available in our digital world, it is necessary and proper under the APA that I inquire into the availability and reasonableness of

administrative remedies to these cases.

USCIS also appears to favor "retaining" the valuable time of Assistant U.S. Attorneys to litigate each of these cases.  Although this cost may not come out of the USCIS budget, it certainly alleviates USCIS from having to give its administrative attention to these Plaintiffs until and unless they reach a critical point in the litigation.

As one example of the bizarre and Kafka-esque nature of this situation, although the government maintains steadfastly in all of these cases that courts have no jurisdiction to issue mandamus relief, the USCIS, as of January 2005, was using, and sent to Plaintiff Mocanu, a "Notice" on the USCIS letterhead, with the heading "FBI Name Check Expedite Criteria," which stated:

> In order for USCIS to expedite an FBI name check request, one of the following criteria must be established. . . .
> The Writ of Mandamus - lawsuit pending in federal court.

(Emphasis added).

It is obviously inconsistent for the government to advise applicants that they could file a writ of mandamus to secure judicial relief, and when such a writ was filed, to then argue that the court has no jurisdiction.  If this policy is still in effect, the Court would seriously consider estopping the government from denying existence of subject matter jurisdiction for mandamus relief.  However, Ms. Gibson stated that the policy statement noted above, which is part of the pleadings in the Mocanu case, has been withdrawn and that USCIS now uses a more detailed explanation on its website, without suggesting a writ of mandamus.  I hasten to add that at least one of the Plaintiffs' counsel at the hearing asserted that the USCIS website does not operate as described, and does not provide information that is accurate or useful to naturalization applicants

such as Plaintiffs.

Although the government has filed Motions to Dismiss or for Summary Judgment in most of these cases asserting lack of subject matter jurisdiction, most of the Courts that have considered this issue in this district have found that subject matter jurisdiction exists, at least under the APA.  However, I cannot fault the Department of Justice for asserting a lack of subject matter jurisdiction in the absence of any appellate ruling on this point.

The complaints in these cases attest to the difficulty the Plaintiffs have had in getting an accurate status of their applications for naturalization.  None of them expect this process to be completed overnight, and none of them deny the importance of appropriate investigation. Indeed, these Plaintiffs appear to be hardworking, law abiding citizens.  On the facts they present, we would be privileged to count them among our fellow citizens.

### III.    Procedural Issues

At the hearing, the Court raised an issue as to whether these cases should be maintained as a class action which would obviate individual cases, but require the filing of an amended complaint.  The Court believes that similar cases in other districts have been filed as class actions, but there does not appear to be any case in which a court has certified a nationwide class. None of Plaintiffs' counsel present at the hearing volunteered to undertake the burden of pursuing a class action for understandable reasons.  However, the government itself could clearly request class action treatment under Rule 23(b)(1) or (b)(2), Fed. R. Civ. P.

Furthermore, if the government felt strongly that district courts did not have subject matter jurisdiction, it could have filed an application under 28 U.S.C. § 1292(b) for interlocutory appeal in any one of these cases – rather than proceeding with discovery and settlement.

The Court also inquired of the Judicial Panel on Multidistrict Litigation as to whether this type of case is pending before it for pretrial consolidation pursuant to 28 U.S.C. § 1407, and was advised that there are no such applications pending at this time.

The Defendants could have, and in my view should have, requested our Chief Judge to consolidate all these cases before a single judge, which would expedite final resolution. Instead, the government seems to have preferred to benefit from the delays inherent in the single-judge assignment system. By failing to request consolidation and failing to cite the decisions of other judges of this Court, the government has sought to benefit from the spread of cases among the judges, thus increasing our workload, and not giving us the benefit of the fact that other judges have decided, or are working on, the same issues. The lack of citations of other decisions requires each judge and his or her law clerks to perform their own detailed and lengthy research to find prior precedents, a time-consuming task that would be more facile if the government were forthright in its case citations. I assume that Ms. Gibson's assurances on this point will be carried forward.

Although independent judicial action is usually a beneficial hallmark of the jurisdiction of district courts, we benefit from the collegial consideration of decisions made by our colleagues, just as appellate judges benefit from decisions made by other appellate judges, in the absence of a controlling precedent by the U.S. Supreme Court.

It appears that in most cases, before a final judgment is reached, the government finds a way to resolve the case, usually by granting the naturalization petition and having the oath administered, so as to make the case moot. The Court was informed that this happened in the

Bodomov case, which had been listed for the hearing on January 8, 2008.[3]  Counsel at the hearing related other instances in which similar occurrences had obviated a need for judicial resolution or an appeal.

The entire pattern of the government conduct in these cases, including the way USCIS is handling the matters, and the Justice Department is briefing them, allows the unfortunate inference that judges and the judicial process are being used as tools to further delay, and obfuscation of the real reasons for delay on these petitions.   From the above facts, specifically the failure to request class action treatment, MDL consolidation, single district consolidation, interlocutory appeal of the subject matter jurisdiction issue, and the surprising lack of citations, I tentatively conclude that the Defendants' strategy is to use litigation as part of the delaying process.

As stated at the hearing, I will require that counsel in Mocanu, Cusumano, Barikbin, and Elissaint file cross motions for summary judgment by January 15, 2008.[4]  The briefs in support need not be lengthy and can include citation or reference to other briefs that have been filed in these other cases in this Court, and arguments may be made in summary fashion.  For the reasons stated on the record and above, I have reached the tentative conclusion that summary judgment as to liability will likely be granted in favor of Plaintiffs in these cases under the Administrative Procedures Act. 5 U.S.C. § 706(1).

---

[3] Counsel had been advised that the oath of citizenship was going to be administered on January 9, 2008, thus making the case moot.  However, I have since learned that the oath was not administered to Mr. Bodomov, and thus his case is not moot.

[4] The parties in Newton and Zhang are also encouraged to file such motions; as they did not have the benefit of attendance at the hearing, however, such motions are suggested but not required by the January 15 deadline.

IV.    **Issuance of Preliminary Injunction**

Because the government is consistently taking steps to make cases moot before a merits resolution is reached, the Court will temporarily enjoin the government, until the hearing on January 22, 2008, from taking any action to make any of the above-captioned cases moot.  This action is necessary because, otherwise, this judicial revolving door will continue from case to case and judge to judge.  Other courts will be forced to consider the same issues over and over again, with extensive briefing without final resolution or testing of the government's position before an appellate court.  I will be available if the government wishes to propose a global solution for improvement and transparency in the administrative process.  However, since the government apparently favors litigation to resolve these cases, this matter will now proceed under judicial supervision for a judicially approved settlement, or final disposition.

Pursuant to Rule 65, Fed. R. Civ. P., the Court, <u>sua</u> <u>sponte</u>, will enjoin the government from resolving these cases pending the January 22 hearing.  Although our judicial system wisely grants parties in most types of litigation the right to settle at any time, these cases are different because they do not seek damages or a specific substantive result.  The Court has decided to issue this temporary injunction because Congress intended the naturalization process to be conducted in a fair and expeditious manner; it certainly did not intend for the process to be what it has been alleged, and what appears to be a judicial revolving door.

The government argues continually that the Plaintiffs in these cases want deadlines but that federal judges are not authorized to, and should not, even if they had discretion, set deadlines.  Setting deadlines is not my preferred intent.  Rather, the purpose should be to encourage, or if necessary, order, USCIS to put in place a transparent, open and user-friendly

-12-

administrative process so that an individual will know easily, quickly and inexpensively, his or her status in the immigration process.  Once that has occurred, Congress may feel that USCIS needs additional resources or that some other legislative fix is necessary.  Subject to developments at the hearing on January 22, 2008, it appears that the Plaintiffs are entitled to relief under the Administrative Procedure Act.  At the hearing on January 22, 2008, the Court will receive testimony and argument on what remedies should be put in place in the event the Court's final conclusion is the one tentatively stated above.

An appropriate Order follows.

## ORDER

AND NOW, this   11th   day of January, 2008, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED as follows:

1.      By January 15, 2008, parties in <u>Mocanu</u>, <u>Cusumano</u>, <u>Barikbin</u>, and <u>Elissaint</u> shall file cross-motions for summary judgment.  Parties in <u>Zhang</u> and <u>Newton</u> shall file cross-motions for summary judgment before 10:00 a.m. on January 22, 2008.

2.      The Court will hold a hearing on these cross-motions for summary judgment on Tuesday, January 22, 2008 at 10:00 a.m. in Courtroom 3A.  As the government requested, it may present evidence as to the appropriate remedy if the Plaintiffs' motions for summary judgment are granted.

3.      Until the hearing on January 22, 2008, pursuant to Rule 65 of the Federal Rules of Civil Procedure and in the interest of justice, Defendants, including but not limited to:

-13-

Emilio Gonzalez, Director, U.S. Citizenship and Immigration Services;

Donald Monica, District Director, U.S. Citizenship and Immigration Services, Philadelphia;

Evelyn Upchurch, Director, U.S. Citizenship and Immigration Services, Texas Service Center; and

officers and employees of the aforementioned agencies;

are hereby temporarily ENJOINED in their official capacity from granting, denying or otherwise settling the applications in the above-captioned cases.  Defendants may not take any action that would make these cases moot or non-justiciable, until the hearing has been held.

BY THE COURT:

s/Michael M. Baylson

_____

Michael M. Baylson, U.S.D.J.

O:\CIVIL 07\07-0445 Mocanu v. Mueller\Mocanu 07-445 Cusumano 07-971 Barikbin 07-3223 Eliassaint 07-4747 Memo Order.wpd

-14-

## APPENDIX

## Recent Immigration Cases in the Eastern District of Pennsylvania

| CASE NAME | HOLDING | DIRECT QUOTATIONS (*italics is summary*; regular font is direct quotation) |
|---|---|---|
| **Kaplan v. Chertoff**, 481 F.Supp.2d 370 (E.D.Pa. 2007)<br><br>**Robreno, J.** | Aliens, humanitarian refugees and asylees who feared losing SSI benefits brought actions against SSA. Govt's Motion to Dismiss is GRANTED under Due Process Clause; Govt's Motion is DENIED to extent that Govt seeks to dismiss for lack of subject matter jurisdiction, or claim that Ps failed to state cause of action under Equal Protection Clause or APA. | CIS has a mandatory non-discretionary obligation to adjudicate such applications within a reasonable amount of time.  It cannot simply ignore them.  The CIS regulations' use of mandatory rather than permissive language supports this conclusion . . . <br>The majority of courts have thus concluded that 'the CIS simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely.  This result is explicitly foreclosed by the APA.' . . . . <br>Here, there appears to be no single statute that, standing alone, expressly imposes a mandatory duty on the FBI to perform background checks . . . . However, it appears clear from a number of Congressional enactments that Congress has imposed a mandatory duty on the FBI to perform background checks in these particular circumstances. |

-15-

| | | |
|---|---|---|
| **Cao v. Upchurch,** 496 F.Supp.2d 569 (E.D.Pa. 2007)<br><br>**Dalzell, J.** | Aliens brought suit seeking order compelling USCIS and FBI to act on their applications after a four-year delay.  Aliens moved for summary judgment, Govt. moved to dismiss.<br>Govt's Motion to Dismiss is DENIED, aliens' motion for summary judgment is GRANTED.  Court gave defendants one month to adjudicate plaintiffs' petitions and to inform plaintiffs of the decision. | (Motion to Dismiss) - We agree with the majority view that USCIS has a non-discretionary duty to adjudicate the application, and therefore a claim under Section 706(a) is cognizable . . . . [b]ecause we find that, in at least some circumstances, the APA supports a cause of action to compel USCIS to reach some decision, defendants' motion to dismiss must fail.<br>(Summary Judgment) - (*discusses how this is a four-year delay, and it is undisputed that recently filed applications are being processed in about six months and that 8 C.F.R. § 103.2(b)(18) requires the district director to determine that a delay is warranted after one year has passed*).  We find that, while circumstances certainly exist that could justify a delay such as the one plaintiffs have experienced, a four-year delay in the review of an application for legal permanent residence is presumptively unreasonable. |
| **Ajmal v. Mueller**, 2007 WL 2071873 (E.D.Pa.  July 17, 2007)<br><br>**Kauffman, J.** | Legal permanent resident filed application for naturalization on Nov. 7, 2005; told case was "pending final background checks" which could delay the process for "undetermined amount of time"<br>Filed suit against USCIS, Homeland Security to compel adjudication.<br>Govt's Motion to Dismiss for lack of subject matter jurisdiction is DENIED. | The majority of courts considering the matter have held that the mere fact that no definitive deadline has been established for scheduling an examination does not mean that USCIS possesses "unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely." . . . To conclude otherwise would render meaningless the APA's directive that agencies resolve matters presented to them "within a reasonable time."  5 U.S.C. § 555(b).  Indeed, even in the absence of specific deadlines, the USCIS has a non-discretionary duty to adjudicate applications for naturalization without unreasonable delay . . . Similarly, the FBI has a mandatory, non-discretionary duty to complete criminal background checks within a reasonable period of time. |

-16-

| | | |
|---|---|---|
| **Song v. Klapakas**, 2007 WL 1101283 (E.D.Pa. April 12, 2007)<br><br>**Stengel, J.** | Plaintiffs filed writ of mandamus to compel USCIS to adjudicate their applications.<br>Govt. filed motion to dismiss. Court DENIED Govt's motion, and REMANDED to USCIS to expeditiously adjudicate plaintiffs' applications (the order states USCIS must complete its adjudication of applications within 30 days, and must promptly notify court and plaintiffs of its decisions.  The court retains jurisdiction over the matter during the interim period). | *Court found SMJ under APA and mandamus statute.* |
| **Elhaouat v. Mueller**, 2007 WL 2332488 (E.D.Pa. Aug. 9, 2007)<br><br>**Joyner, J.** | Lawful permanent resident filed naturalization application on May 17, 2004.  Application was pending more than three years, so filed suit against FBI, CIS, Homeland Security. Govt filed a Motion to Dismiss for lack of SMJ.. Court DENIED Govt's Motion. | *Court finds there is SMJ under the APA. In a footnote in discussing the multiple defendants, Court states*: "Moreover, the Court would have to dismiss [Petitioner's] claim against the CIS for unreasonable delay in the processing of his application if the FBI's failure to complete his background check is the cause for the delay (citing* Kaplan).  But absent discovery, the Court cannot determine whether the delay in [Petitioner's] case is 'attributable' to the CIS or FBI.  Accordingly, it is not proper to dismiss any of the agency defendants at this time.* |
| **Villico v. Monica**, 2007 WL 2597344 (E.D.Pa. Sept. 4, 2007)<br><br>**Fullam, J.** | Italian citizen seeks writ of mandamus to compel CIS to adjudicate his application. Govt. filed a Motion to Dismiss. Court DENIED Govt's Motion. | *Issued one paragraph - simply cites Judge Kauffman's decision in* Ajmal *and sees no reason to depart.* |

| | | |
|---|---|---|
| **Sharawneh v. Gonzales**, 2007 WL 2684250 (E.D.Pa. Sept. 10, 2007)<br><br>**Dubois, J.** | Legal permanent resident seeks an order to compel CIS to adjudicate his application for naturalization.<br>Govt. filed Motion to Dismiss.<br>Court DENIED Govt's Motion. | *Finds jurisdiction under the APA and the mandamus statute.* The USCIS regulations make it clear that there is a non-discretionary duty to adjudicate applications. See 8 C.F.R. 316.14(b)(1) |
| **Ahmed v. Mueller**, 2007 WL 2726250 (E.D.Pa. Sept. 14, 2007)<br><br>**Giles, J.** | Plaintiff asks court to conduct hearing on his naturalization application to determine whether he should be schedule for an oath ceremony, or in the alternative requests court direct Govt to schedule interview on his naturalization application and issue decision within 30 days thereafter.<br>Govt filed Motion to Dismiss for lack of subject matter jurisdiction.<br>Court GRANTED Govt's Motion. | *Court determines it does not have jurisdiction to conduct a de novo review of Plaintiff's application under Section 1421 of the INA.*<br>This court finds that the appropriate question . . . is whether defendants have a non-discretionary duty immediately to schedule the interview of an applicant . . . . The USCIS does not have a non-discretionary duty to conduct an interview of applicant when FBI has not yet completed his background check *(since under regulations, interviews can be scheduled only after criminal background check is complete. The Court also states it has no authority to require the FBI to conduct background checks within any specific time frame).* |
| **Shaat v. Klapakis**, 2007 WL 2768859 (E.D.Pa. Sept. 21, 2007)<br><br>**Pollak, J.** | Lawful permanent resident filed application for naturalization on May 24, 2005.  CIS cancelled her scheduled interview; she later received letter saying case was delayed due to background investigation.  She filed action against CIS seeking writ of mandamus to compel decision on her application.<br>Govt. filed Motion to Dismiss for lack of SMJ.<br>Court DENIED Govt's Motion, finding jurisdiction under the mandamus statute (and thus did not reach the question of jurisdiction under the APA). | *Distinguishes <u>Ahmed</u>.  Acknowledges point in <u>Ahmed</u> that it is unclear if CIS has duty to proceed until FBI does background check* - However, the court agrees with <u>Kaplan</u>'s holding that 'whether the delay is attributable to the FBI or CIS is a factual matter' going to the merits of the petition rather than the court's jurisdiction.<br>Court finds that CIS has a duty to adjudicate naturalization applications that is 'positively commanded and so plainly prescribed as to be free from doubt,' and because the court finds that [Plaintiff's] complaint otherwise 'states nonfrivolous allegations of the existence of the essential elements supporting a mandamus action,' the court holds that [Petitioner's] complaint establishes jurisdiction under the mandamus statute. |

| | | |
|---|---|---|
| **Assadzadeh v. Mueller**, 2007 WL 3252771 (E.D. Pa. Oct. 31, 2007)<br><br>**Tucker, J.** | Lawful permanent resident filed application for naturalization on June 28, 2005.  Received letters saying interview was descheduled "pending final background checks."  Received no notification or interview. Filed suit seeking declaratory judgment for naturalization or writ of mandamus compelling Govt to process his application. Govt. filed Motion to Dismiss. Court GRANTED Motion with respect to declaratory judgment for naturalization, DP and EP claims; Court DENIED Motion with respect to APA violation - unreasonable delay and regulatory claims, as well as the mandamus claim. | While the USCIS has some discretion whether to grant or to deny an application for naturalization, it has no discretion on whether to process an application . . . . Similarly, the FBI has a mandatory duty to conduct background checks.  Because Defendants have a non-discretionary duty to adjudicate naturalization applications and complete background checks, they must do so in a reasonable amount of time. That the INA does not provide a specified time-frame for doing so is of no import; the APA's rule of reasonable timeliness applications.  5 U.S.C. § 555(b). |
| **Costa v. Chertoff**, et al., No. 07-2467 (Dec. 17, 2007), **Mitova v. Chertoff**, No. 07-2631<br><br>**Dubois, J.** | In both cases, Petitioner files suit against FBI, USCIS, and Homeland Security to compel action/issue results of background check. Govt moved for Motion to Dismiss in both cases.  Court GRANTED Def's Motion to Dismiss as to the FBI, and DENIED Def's Motion as to Homeland Security, USCIS. (In Costa, Plaintiff moved for SJ; Court did not address this) | **(Costa) -** The USCIS has a mandatory, non-discretionary duty [under 8 C.F.R. § 316.14(b)(1); see also Kaplan] to adjudicate applications for naturalization, such as plaintiff's, within a reasonable period of time - 'that neither Congress nor the agency has specified the time frame for doing so makes no difference.' . . . . However, no statute or regulation cited in Kaplan or by plaintiff expressly creates a mandatory duty owed by the FBI to individual naturalization applicants to process background and name checks and forward the results of these checks to the USCIS. |

| | | |
|---|---|---|
| **Mighri v. Gonzales**, 2007 WL 4463590 (E.D.Pa. Dec. 19, 2007)<br><br>**Giles, J.** | Permanent resident filed application for naturalization on June 21, 2006.  Plaintiff filed complaint, asking court to direct FBI to complete background check on P immediately and to direct Homeland Security to adjudicate P's naturalization application or schedule an interview on his naturalization application immediately.  Govt. filed Motion to Dismiss, which was unopposed.  Subsequently, Def's FBI background check was completed as of Nov. 25, 2007.<br>Court GRANTED Govt's Motion. | Because the governing statutes and regulations do not require adjudication of an application for naturalization within a certain time frame following notice of the completion of FBI background checks, this court lacks subject matter jurisdiction over Plaintiff's claim for relief - to schedule immediately Plaintiff's naturalization interview - under the APA or mandamus statute.<br>The court understands that Plaintiff may be frustrated by the pace at which his application is currently processing.  This is insufficient to confer jurisdiction upon this court . . . . The court concludes that there is no non-discretionary duty to schedule an interview on a naturalization application when the FBI has completed its criminal background investigation of the applicant.  As such, subject matter jurisdiction does not exist. |
| **Qui v. Chertoff,** 486 F.Supp.2d 412 (D.N.J. 2007)<br><br>**Chesler, J.** | Alien filed complaint asking Court to compel USCIS to adjudicate her application for lawful permanent resident status.<br>Govt. filed Motion to Dismiss.<br><br>Court GRANTED Govt's Motion, finding no SMJ under APA or mandamus statute. | *Determined that immigration officials do not have a non-discretionary duty to adjudicate adjustment of status applications*. |
| **Badier v. Gonzales**, 2006 WL 4079085 (N.D.Ga. Dec. 1, 2006)<br><br>**Martin, J.** | Legal permanent resident applied to become a naturalized citizen in Jan. 2001; was denied on moral character ground.  Pet'r filed second application for naturalization on July 5, 2005.  Govt. filed Motion to Dismiss for lack of SMJ.<br>Court GRANTED Govt's Motion, finding no jurisdiction under INA, APA or mandamus statute. | *The Government often cites this Georgia case in their briefs.  Some courts in the E.D.Pa reference this case, but then disagree with it.* |